IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| VANDERBILT MORTGAGE AND FINANCE, INC., | § § § § | |
| Plaintiff/Counter-Defendant, | § § | CIVIL ACTION NO. _____ |
| VS. | § § | |
| ALEJANDRO MEDINA AND SYLVIA AGUILAR | § § § § | |
| Defendants/Counter-Plaintiffs | § | |

**PLAINTIFF/COUNTER-DEFENDANT VANDERBILT MORTGAGE AND FINANCE, INC.'S PETITION FOR AN ORDER TO COMPEL ARBITRATION AND TO STAY LITIGATION**

Pursuant to 9 U.S.C. § 4, Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") petitions this Court for an order compelling Defendants/Counter-Plaintiffs Alejandro Medina and Sylvia Aguilar to arbitrate the counterclaims they asserted in a suit currently pending in Jim Wells County, Texas, styled *Vanderbilt Mortgage and Finance, Inc. v. Alejandro Medina and Sylvia Aguilar*, Cause No. 09-08-48300-CV (the "State Court Action").

I.   **RELEVANT FACTS AND PROCEDURAL HISTORY**

On March 25, 2002, Alejandro Medina and Sylvia Aguilar (the "Defendants") executed a Retail Installment Agreement—Security Agreement (the "Contract") in order to finance the purchase of a manufactured home. (Ex. A.) Vanderbilt, as assignee from CMH Homes, Inc., is the present owner and holder of the Contract. (*Id.*)

Defendants failed to make payments as promised and defaulted under the terms of the Contract. (Ex. B at 2.) After providing the required opportunity to cure, Vanderbilt filed the

1

State Court Action on August 21, 2009, alleging that Defendants defaulted under the Contract and seeking to repossess or foreclose on the manufactured home. (*Id.*)

On September 18, 2009, Defendants answered and asserted various counterclaims that arise out of or relate to the Contract. (Ex. C.) In essence, Defendants allege that Vanderbilt's foreclosure suit is improper because they no longer owe any debt to Vanderbilt. (*Id.* at 4.) Defendants also allege that Vanderbilt knowingly misrepresented the amount of the debt due under the Contract and, thus, fraudulently collected certain sums over the last several years. (*Id.* at 4-6.) Defendants characterize their allegations as violations of the Texas Debt Collection Act and the Texas Deceptive Trade Practices Act. (*Id.*) In addition, Defendants allege that Vanderbilt committed fraud by knowingly misrepresenting the amount of the debt and that Vanderbilt's actions, in total, constitute a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (*Id.* at 6-9.)

The Contract contains the following arbitration provision:

> **ARBITRATION**: All disputes, claims or controversies arising from or relating to this contract, or the subject hereof, or the parties, including the enforceability or applicability of this arbitration agreement or provision and any acts, omissions, representations and discussions leading up to this agreement, hereto, including this agreement to arbitrate, shall be resolved by mandatory binding arbitration by one arbitrator selected by Seller with Buyer's consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL.** The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract. The parties agree that the arbitrator shall have all powers provided by law, the contract and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and

injunctive relief. Notwithstanding anything hereunto the contrary, Seller retains an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by Seller pursuant to this provision.

(Ex. A at 3 (emphasis in original).) This agreement was voluntarily entered into by the Defendants and contains the express provision that the parties knowingly and voluntarily agree to waive their rights to a jury trial and submit to binding arbitration. (*Id.*)

The arbitration agreement expressly provides that Vanderbilt does not waive its right to compel arbitration by filing suit to obtain a money judgment or to enforce a security agreement. (*Id.*) Indeed, the arbitration provision contemplates that if a counterclaim is filed in a foreclosure suit filed by Vanderbilt, that Vanderbilt expressly retains the right to compel arbitration as to any counterclaims asserted within that same suit. (*Id.*)

Vanderbilt is entitled to have this matter arbitrated as mandated by the clear arbitration provision in the Contract. Although Vanderbilt denies that there is any merit to Defendants' counterclaims (*see* Ex. D), Vanderbilt is entitled to defend against them in an arbitration proceeding.

## II. ARGUMENT AND AUTHORITIES

### A. The arbitration agreement is governed by the Federal Arbitration Act.

Vanderbilt moves to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.* (Ex. A at 3 (Contract is "governed by the Federal Arbitration Act at 9 U.S.C. Section 1").) The FAA establishes a "federal policy favoring arbitration" and applies to all transactions "involving commerce." *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24 (1983); s*ee* 9 U.S.C. § 2. Vanderbilt, a Tennessee corporation, provided financing under the Contract signed in Texas, and thus the transaction "involve[d] commerce." (Ex. E, Aff. of David Barton); s*ee also Origen Fin., LLC v. Thompson*, No. 3:07-cv-318-WHB-LRA, 2007 WL 3407391, at *4 (S.D. Miss. Nov. 15, 2007) (holding that the financing of a manufactured home "necessarily involve[d] interstate commerce" when the contract was signed in Mississippi but the transaction was funded with capital sources from Delaware and Virginia).

**B.     This Court has subject matter jurisdiction over this action.**

Section 4 of the FAA provides that a party may obtain relief in federal court under the FAA when the underlying civil action would otherwise be subject to the court's federal question or diversity jurisdiction. *See Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 685 (5th Cir. 2001). The Fifth Circuit has recognized that under Section 4 of the FAA, it is proper to file a motion to compel arbitration in federal court while a case is pending in state court. *See, e.g., Snap-On Tools Corp. v. Mason*, 18 F.3d 1261 (5th Cir. 1994) (holding that district court erred in abstaining from deciding motion to compel arbitration while state action was pending and remanding with directive to enter order compelling arbitration). Because the parties are diverse and the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.[1] Vanderbilt's corporate headquarters and principal place of business are in Tennessee. (Ex. C at 3.) Defendants are residents of Jim Wells County, Texas. (Ex. C at 3.) Accordingly, there is complete diversity of citizenship between the parties.

---

[1] Furthermore, Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate . . . may petition any United States district court which, save for such agreement, would have [independent] jurisdiction under Title 28 . . . for an order directing that such arbitration proceed." 9 U.S.C. § 4.

The amount in controversy required for diversity jurisdiction is also satisfied. In the Fifth Circuit, "the amount in controversy in a motion to compel arbitration is the amount of the potential award in the underlying arbitration proceeding." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 256 (5th Cir. 1996); *Dealer Computer Servs., Inc. v. O'Connor Chevrolet, Inc.*, No. Civ. A. H-08-2986, 2009 WL 1743830, at *3 (S.D. Tex. June 17, 2009) (quoting *Webb* and observing that "Fifth Circuit authority is clear: 'the amount in controversy in a motion to compel arbitration is the amount of the potential award in the underlying arbitration proceeding'"). Other circuits have also routinely held that the proper measure of the amount in controversy in a petition to compel arbitration is that in the underlying dispute between the parties.[2] Thus, the measure of the amount in controversy in this case is the amount that may be awarded in the underlying arbitration proceeding.

Here, the amount in controversy clearly exceeds $75,000 because Defendants seek treble damages under a variety of theories and have also asserted claims for noneconomic damages like mental anguish. (Ex. C at 4-9.) When a claim includes a prayer for compensatory

---

[2] *See, e.g., Advance Am. Servicing of Ark., Inc. v. McGinnis*, 526 F.3d 1170, 1175 (8th Cir. 2008) ("[I]t is the possible arbitration award that determines the amount in controversy . . ."); *America's Moneyline, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004) ("In the context of actions to compel arbitration, we have adhered to the rule that, in order to ascertain whether the jurisdictional amount for the diversity statute has been met, the appropriate focus is the stakes of the underlying arbitration dispute."); *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) ("This court, however, finds persuasive the holding of other circuits that 'look through to the possible award resulting from the desired arbitration' to determine the amount in controversy."); *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 160 (2d Cir. 1998) ("In the context of a petition to compel arbitration, we have advised district courts to 'look through to the possible award resulting from the desired arbitration, since the petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming the award.'") (quoting *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957)); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997) ("Section 4 [of the FAA] provides for an order compelling arbitration . . . when the federal district court would have jurisdiction over a suit on the underlying dispute . . . ."); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) ("[T]he amount in controversy in a petition to compel arbitration or appoint an arbitrator is determined by the underlying cause of action that would be arbitrated."); *In re Marcy Lee Mfg. Co. & Cortley Fabrics Co.*, 354 F.2d 42 (2d Cir. 1965) (affirming a district court's order compelling arbitration under the FAA and stating that the jurisdictional amount is what a party might obtain from the arbitration it seeks to compel). Likewise, Professors Wright and Miller recognize that "[i]n a petition to compel arbitration, the amount in controversy is determined by the possible award resulting from the desired arbitration." 14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3702, at 61 (3d ed. 1998).

and punitive damages, both must be considered when determining the amount in controversy. *See Bell v. Preferred Life Assurance Soc'y of Montgomery*, 320 U.S. 238, 240 (1943); *see, e.g., White v. FCI USA, Inc.*, 319 F.3d 672, 674-76 (5th Cir. 2003) (per curiam) (affirming district court's finding that compensatory and punitive damages sought met amount in controversy requirement). If a state statute provides for attorneys' fees, those fees are also included as part of the amount in controversy. *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990).

Defendants allege, among other things, that their debt to Vanderbilt was somehow released in October 2005. (Ex. C at 5-9.) Defendants' monthly payment was $451.97, which means that Defendants allegedly overpaid Vanderbilt at least $17,174.96 between October 2005 and the time that they defaulted under the Contract. (*Id.*; *see also* Ex. A at 1.) If Defendants' alleged actual damages are trebled, as demanded in the petition, the amount in controversy is at least $51,524.88. (Ex. C at 6, 9.) Add to that sum Defendants' assertion that they are entitled to damages for mental anguish and physical injury, as well as exemplary damages, and the amount in controversy requirement for diversity jurisdiction is easily met. (*Id.* at 5-9.) In addition to these unliquidated amounts, Defendants' claim for attorneys' fees pursuant to the Texas Debt Collection Act or Texas Deceptive Trade Practices Act claim make it clear that more than $75,000 is at issue. (*Id.* at 6, 9.) This Court has subject matter jurisdiction over this suit.

C.  **Defendants' claims against Vanderbilt should be compelled to arbitration as a matter of law.**

Defendants expressly agreed that "[a]ll disputes, claims or controversies arising from or relating to this contract, or the subject hereof, or the parties . . . shall be resolved by mandatory binding arbitration." (Ex. A at 3.) There can be no dispute that Vanderbilt is the rightful holder of the Contract, that the arbitration agreement is valid and enforceable, and that

Defendants' claims fall within the scope of the arbitration agreement. This Court should, therefore, compel arbitration. *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998) (explaining that a party seeking to compel arbitration under the FAA must establish that there is a valid arbitration agreement and that the dispute falls within the scope of the arbitration agreement).

### 1. There is a valid arbitration agreement between the parties.

There is no dispute that a valid arbitration agreement exists in the Contract. The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Vanderbilt has met the first prong of demonstrating that arbitration is appropriate in this case.

### 2. Defendants' counterclaims fall within the scope of the arbitration agreement.

There is also no dispute that Defendants' counterclaims fall within the scope of the arbitration agreement. The contract is a "broad form" provision requiring "[a]ll disputes, claims or controversies arising from or relating to this contract." to be arbitrated. (Ex. A at 3.) The Fifth Circuit has repeatedly held that arbitration agreements like the one in the Contract are to be interpreted broadly. *See Pennzoil*, 139 F.3d at 1067; *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998). Such broad clauses "governing disputes that 'relate to' or 'are connected with' the contract" are readily distinguished from the "narrow" arbitration clauses that only require arbitration of the disputes "arising out of" the

contract. *See Pennzoil*, 139 F.3d at 1067. Defendants' counterclaims alleging wrongful debt collection, among other things, are captured by this provision and should be arbitrated.[3] *Id.*

Once the court determines that an arbitration agreement exists and that the alleged claims fall within its scope, it *must* compel arbitration of claims subject to the agreement. *See Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 590 (5th Cir. 1998) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (internal quotation marks omitted) (alteration in original). Furthermore, under the terms of the arbitration agreement, Vanderbilt expressly retained the right to compel arbitration even after it brought suit to foreclose on the Contract. (Ex. A at 3.) Defendants should be compelled to arbitrate all of their counterclaims as a matter of law.

**D.     The Defendants should be enjoined and State Court Action should be stayed.**

Because the claims asserted by Defendants against Vanderbilt in the State Court Action should be compelled to arbitration as a matter of law, the Court should enjoin the Defendants, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), from proceeding in the State Court Action or any other action related to these claims pending arbitration, and also should stay the State Court Action pursuant to the All Writs Act and the Anti-Injunction Act, 28 U.S.C. § 2283.

The All Writs Act, 28 U.S.C. § 1651(a), provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Thus, if this Court grants the motion to compel arbitration, it should also enjoin the Defendants from

---

[3] Even if the scope of the arbitration provision was somehow at issue, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

proceeding in the State Court Action or any other action related to these claims pending arbitration.

The authority that federal district courts have to enjoin state proceedings, as opposed to individual parties, pursuant to All Writs Act must be construed along with the provisions of the Anti-Injunction Act, which provides that "[a] court of the United States may not . . . stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Federal courts have recognized that an order compelling arbitration is the type of judgment that warrants a stay of a state court action under 28 U.S.C. § 2283 in order to "protect and effectuate" the decision regarding arbitration. *See Am. Gen. Fin. Servs., Inc. v. Griffin*, 327 F. Supp. 2d 678, 686 (N.D. Miss. 2004) ("[A] stay is required to protect or effectuate this Court's judgment and order that the controversy between the parties be submitted to arbitration"); *Am. Heritage Life Ins. Co. v. Beasley*, 174 F. Supp. 2d 450, 457 (N.D. Miss. 2001) (staying the state court proceeding pending arbitration and holding that "the policies embodied in the FAA militate against having ongoing state proceedings at the very time those same claims are the subject of arbitration proceedings") (*aff'd*, 37 F. App'x 712 (5th Cir. 2002); *Am. Heritage Life Ins. Co. v. Harmon*, 147 F. Supp. 2d 511, 517 (N.D. Miss. 2001) (concluding "that the principle of judicial economy, the strong judicial policy favoring arbitration expressed by the Supreme Court, the plain language of the Anti-Injunction Act, and the policies embodied in the FAA warrant a stay").

The Fifth Circuit agrees. *See Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 712 (5th Cir. 2002) (affirming district court's decision to compel arbitration under the FAA and stay state court proceedings); *Woodmen of World Life Ins. Soc'y v. JRY*, 320 F. App'x 216, 222

(5th Cir. 2009) (remanding to the federal district court with direction to order arbitration and stay state court proceedings) (*cert. denied*, No. 09-207, 2009 WL 2523877 (Nov. 16, 2009). The federal policy embodied in the FAA and the principles of judicial economy counsel against allowing the State Court Action in this matter to proceed when the claims brought in that action are to be submitted to arbitration. In addition to enjoining the Defendants from proceeding in the State Court Action or any other action related to these claims pending arbitration, this Court should stay the State Court Action.

### III. CONCLUSION

The arbitration agreement in the Contract should be enforced and this Court should compel Defendants to resolve their claims in arbitration. This Court should also stay the State Court Action pending the completion of arbitration, and provide Vanderbilt such other and further relief to which it is justly entitled.

Dated: 11/18/09

Respectfully submitted,

Jorge C. Rangel
Attorney-in-Charge
State Bar No. 16543500
Federal I.D. No. 5698
Jaime S. Rangel
State Bar No. 24033759
Federal I.D. No. 32226
The Rangel Law Firm, P.C.
615 Upper N. Broadway, Suite 2020
Corpus Christi, Texas 78477
Telephone: (361) 883-8500
Facsimile: (361) 883-2611
Email: jorge.c.rangel@rangellaw.com
Email: jaime.rangel@rangellaw.com

ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT
VANDERBILT MORTGAGE AND FINANCE, INC.

OF COUNSEL:

BAKER BOTTS L.L.P.

Stephen G. Tipps
Texas State Bar No. 20070500
Federal I.D. No. 00805
Cristina Espinosa Rodriguez
State Bar No. 00793701
Federal I.D. No. 20575
Jennifer A. Powis
State Bar No. 24041716
Federal I.D. No. 605931
One Shell Plaza
910 Louisiana
Houston, Texas 77002-4995
Telephone: (713) 229-1188
Facsimile: (713) 229-7788
E-mail: stephen.tipps@bakerbotts.com
E-mail: cristina.rodriguez@bakerbotts.com
E-mail: jen.powis@bakerbotts.com

CERTIFICATE OF CONFERENCE

      I certify that around 9 a.m. on November 18, 2009, I placed telephone calls to Baldemar Gutierrez, Javier Guitierrez and David Rumley, attorneys of record for Defendants/Counter-Plaintiffs. I left messages with their respective assistants. I subsequently received a return telephone call from Javier Gutierrez. I told Mr. Gutierrez that the purpose of my call was to confer on this Petition for an Order to Compel Arbitration and to Stay Litigation, which I intended to file in federal court today. I told Mr. Gutierrez that for purposes of this Certificate of Conference, I needed to know whether Defendants/Counter-Plaintiffs were opposed or not opposed to the filing. In response to my question, Mr. Gutierrez stated that he was not in a position to say "yes" or "no" and that he would have to confer with his team before he could let me know one way or the other. As of this filing of this Petition, I have not heard back from counsel for Defendants/CounterPlaintiffs. I will supplement this Certificate of Conference once I hear from counsel for Defendants/CounterPlaintiffs.

_____
Jorge C. Rangel

CERTIFICATE OF SERVICE

      I certify that true and correct copies of this motion are being served upon all counsel of record via certified mail, return receipt requested this 18th day of November 2009, addressed as follows:

J. Javier Gutierrez
The Gutierrez Law Firm, Inc.
700 East 3rd Street
Alice, Texas 78332

David L. Rumley
Wigington Rumley, LLP
800 N. Shoreline
14th Floor - South Tower
Corpus Christi, Texas 78401

James W. Upton
K. Clifford Littlefield
Upton, Mickits, & Heymann L.L.P.
Frost Bank Plaza
802 N. Carancahua, Suite 450
Corpus Christi, Texas 78470

_____
Jorge C. Rangel